```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 07-14057-Civ-MOORE
                                    MAGISTRATE P. A. WHITE
JEFFREY GISSENTER,           :

       Plaintiff,            :

v.                           :        REPORT OF
                                      MAGISTRATE JUDGE
NURSE KING, et al.,          :

       Defendants.           :
_____
```

**INTRODUCTION**

Jeffrey Gissenter, who is now confined at Florida State Prison, submitted a pro se civil rights complaint pursuant to 42 U.S.C. §1983 (DE# 1; dated 1/24/07, and file stamped 3/9/07) raising claims against six defendants, concerning medical care and use of force. The claims stem from events which Gissenter alleges occurred on July 30 and July 31, 2006, at Martin Correctional Institution ("MCI") where he was previously confined. An initial Order of Instructions (DE# 7) informed Gissenter of his duty as plaintiff to provide all necessary information for each defendant [name, title and full address] so service of process could be achieved (DE# 7, ¶2). That Order cautioned that the case was subject to dismissal as to any defendant who could not be served due to lack of information (Id.). After a Preliminary Report and Order of partial dismissal (DE#s 5, 23), the case remained pending against 5 MCI defendants: Nurse Kelly King, Sergeant J.E. Sawyer, and Officers Showtight, A. Smith, and P. Davis.[1] **This Cause is before the Court upon separate Motions for Summary Judgment by defendants King and Sawyer (DE#s 47 and 50, respectively)**, each with multiple exhibits, as to which plaintiff was advised of his right to respond (see Orders, DE#s 49, 53).[2] Gissenter has not responded to either motion.

---

[1] Pursuant to the Preliminary Report and Order (DE#s 5, 23), one defendant, Captain A. Williams, was dismissed. Subsequently, a motion to dismiss by Nurse King was denied (see Motion DE#12, Report DE#21, Order DE# 42).

[2] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

The plaintiff's allegations were summarized in the Preliminary Report, as follows:

On July 30, 2006, at MCI, the plaintiff had chest pains and was

---

there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir.1987), Orders of Instruction (DE#s 49 and 53) were entered, informing plaintiff Gissenter as a *pro se* litigant, of his right to respond to the defendants' motions for summary judgment. The Orders (DE#s 49, 53) specifically instructed Gissenter regarding the requirements under Fed.R.Civ.P. 56 for a proper response to such a motion.

```
waiting at his cell door to request assistance from Nurse King
when she made her rounds.  Nurse King, who was accompanied by
Sgt. Sawyer, arrived at the cell.  At that time, the plaintiff
tried to tell King that he had chest pains, but Sawyer told the
plaintiff to get away from the cell door and grabbed King's arm
and escorted her away from the cell.  The plaintiff started
yelling to Nurse King complaining of chest pain, but she refused
to acknowledge him and she left the dorm. Sawyer then went back
to the plaintiff's cell, made a racist remark and left.  The next
day, Sawyer and Smith came to the plaintiff's cell and handcuffed
him, and Smith held his right arm while Sawyer struck him in the
jaw and eye.  Thereafter, Showtight and Davis arrived, and joined
with Sawyer and Smith to kick and punch the plaintiff, causing
severe physical injuries.  Williams then arrived with a video
camera, ordered Smith to adjust the handcuffs, and helped Smith
and Davis take the plaintiff to medical.  Williams did not
videotape the plaintiff, and he left the medical clinic after
advising the nurse of what had happened.  The plaintiff states
that Nurse King first questioned him about his injuries, waiting
five minutes to put stitches near his eye, and she ignored his
requests for treatment on all other injuries.  The plaintiff
states that King did not file a report nor did she contact prison
inspectors or other law enforcement officials to report the
physical assault by the corrections officers.  After King treated
him, Davis and Smith took the plaintiff back to an empty cell,
leaving him in handcuffs and leg chains for 5 ½ hours and without
his personal property or any bedding.  The plaintiff states that
he has filed grievances, but none has been investigated.
```

(DE# 5, Preliminary Report, p. 4).

## DISCUSSION

### Defendants Showtight, Davis and Smith

Unexecuted Process Receipts and Returns (DE#s 33, 34, 35) were filed for defendants Smith, Davis, and Showtight with the following explanations for Smith ["No longer works for Martin C.I. No forwarding Information"], for Davis ["No Officer P. Davis employed at M.C.I."]; and for Showtight ["No Officer Showtight employed at MCI"]. An Order was entered on November 19, 2007 (DE# 39) informing plaintiff Gissenter that service by the Marshal was unsuccessful for the three defendants. The Order instructed him that it was his duty to provide sufficient information (full name, title, if any, and address) for each defendant in order that service could be accomplished. (Id.). It granted Gissenter until December 10, 2007, to do so, and cautioned him that failure to provide the information could result in dismissal of one or more defendants. (Id.).

3

Thereafter, no current addresses for the three unserved defendants were provided by Gissenter. It is now in excess of 470 days since the complaint was received and docketed by the Clerk of Court [DE# 1], and it appears that, as to the 3 unserved Officers (Smith, Davis, and Showtight) the complaint should be dismissed pursuant to Fed.R.Civ.P. 4(m), which provides for dismissal of a complaint which could not be served within 120 days of its filing.

### Defendants King and Sawyer

In brief, the claims by Gissenter against Sgt. Sawyer and Nurse King are, as follows. Based on the events of July 30, 2006, Sawyer and King allegedly denied King medical care when he attempted to request attention for chest pains. On July 31, 2006, Sawyer allegedly engaged in excessive force by assaulting Gissenter while he was handcuffed.[3] Then, on July 31, 2006, Nurse King allegedly questioned Gissenter for about five minutes, thereby causing delay of treatment -- the suturing of a cut near his eye; and she allegedly ignored his requests for treatment of other injuries after the stitches had been applied, thereby denying him medical care. Finally, the alleged utterance of a racist remark by Sawyer toward plaintiff on July 30, followed by Sawyers's alleged physical brutality on July 31, 2006, was interpreted [construing the complaint liberally] as raising a claim that Sawyer violated plaintiff Gissenter's right to equal protection by intentionally physically injuring him based on his race.

### King

Nurse King's exhibits attached to her summary judgment motion include both her Affidavit (DE# 47-4), plaintiff's deposition (DE#s 47-2 and 47-3), and the Affidavit of Maribel Alvarez, R.N., Director of Nursing at MCI (DE# 47-7). King, in her motion, argues entitlement to judgment in her favor on multiple grounds.

King proffers a defense that Gissenter's complaint is subject

---

[3] Smith, Showtight and Davis also allegedly participated in the assault.

4

to dismissal, pursuant to 42 U.S.C. §1997e(a), for failure to exhaust his available administrative remedies before filing suit in federal court, as required under the Prison Litigation Reform Act of 1995 ("the PLRA").[4] King further argues that she is entitled to judgment on the merits because she was not deliberately indifferent to Gissenter's serious medical needs on July 30, 2006;[5] and that, in the absence of a causal connection between her and the alleged deprivation, she cannot be held liable for the alleged events of

---

[4] The Prison Litigation Reform Act of 1995 ("PLRA"), as enacted on April 26, 1996, significantly altered a prisoner's right to bring civil actions *in forma pauperis*. Upon its enactment, the PLRA placed new restrictions on a prisoner's ability to seek federal redress concerning prison conditions (conditions of confinement). Subsection (a) of 42 U.S.C. §1997e, which is part of the PLRA, reads, as follows:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

[5] Nurse King argues with respect to the events of July 30, 2006, that although alleged to have ignored plaintiff's attempt to get her help for chest pain as she was passing through his unit on medication rounds, she cannot be deemed liable for ignoring his serious medical needs because she did not know of plaintiff's alleged chest pain that day, and therefore she did not have [and disregard] subjective knowledge that he had chest pains or any other serious risk of harm. Specifically, King states in her Affidavit, DE# 47-4, that she has no recollection of Jeffrey Gissenter ever complaining to her about chest pain on July 30, 2006. King states that it is her custom and practice that if a prisoner/plaintiff [i.e., Jeffrey Gissenter] complained of chest pain that it would be taken seriously and never ignored; and that if Gissenter had complained of chest pain, she would have documented the same in his medical record on July 30, 2006.

In her motion, King further references statements/admissions by Gissenter during his own deposition, which she claims show that he did not have a serious medical need on July 30, 2006, and that she did not intentionally ignore a serious need and Gissenter's alleged request. This additional testimony by Gissenter which King asserts shows lack of deliberate indifference to a serious medical need, is as follows.  Gissenter stated: that he has never been diagnosed with heart abnormality or disease, respiratory disorder, or hypertension; that his chest pains resolved on July 30, without the need for medical attention or treatment; that they were just like pains in the chest area which previously occurred during vigorous exercise, and were diagnosed as muscle spasm or sprain, and resolved with analgesic balm and Ibuprophen. As for Gissenter's claim that she allegedly ignored him on July 30, 2006, King points to Gissenter's deposition testimony that it was his belief that she heard him because saw her nod her head. This, Gissenter interpreted to mean that she heard what he said and that she would return to talk to him after she finished her rounds.

5

July 31, 2006, because she was not at work that day.[6]

Review of the record shows that defendant King's lack of exhaustion defense, which is treated as a threshold matter, is dispositive of the complaint against her; and therefore, although briefly discussed, supra, in notes 4 and 5 of this Report and related text, it is not necessary or appropriate, on the claims against Nurse King, for the Court to reach judgment in this case based on the merits.

The Courts have held that satisfaction of the PLRA exhaustion requirement serves as a threshold issue, since the statutory mandate requires a prisoner to have fully exhausted the administrative remedies/processes which are available to him or her, before bringing suit on a claim in federal court, regardless of the form of relief that the administrative process makes available. See Booth v. Churner, 532 U.S. 731, 736-41 (2001); Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11 Cir. 1998); Miller v. Tanner, 196 F.3d 1190, 1193 (11 Cir. 1999); Harris v. Garner, 190 F.3d 1279, 1286 (11 Cir. 1999); Harper v. Jenkin, 179 F.3d 1311, 1312 (11 Cir. 1999).

The inmate grievance procedure for Florida Inmates, as published in the Florida Administrative Code ("F.A.C.") at §33-103, "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrongs." Johnson v. Meadows, 418 F.3d 1152, 1155 (11 Cir. 2005). In general, the rules for Florida inmate grievances, as published in the Florida Administrative Code, provide first for an inmate to file an Informal Grievance, see F.A.C. §33-103.005(1), and thereafter, if dissatisfied with the response, to file a formal grievance at the institution, see: F.A.C. §33-103.006, et seq. Thereafter, in the event that the inmate feels the grievance was not satisfactorily resolved during the formal grievance procedure, he may file a Request for Administrative Remedy or Appeal to the Office of the Secretary

---

[6] Defendant King offers the Affidavit of Maribel Alvarez, R.N., Director of Nursing at MCI (DE# 47-7), which establishes that she (Kelly King, LPN) was not on duty at MCI on July 31, 2006.

[Bureau of Inmate Grievance Appeals]. See F.A.C. §33-103.007, et seq.; Chandler v. Crosby, 379 F.3d 1278, 1288 (11 Cir. 2004).

Under certain circumstances, the inmate may bypass the filing of an informal grievance, and proceed directly to the filing of a formal grievance. (This includes instances of emergency, reprisal, or medical concerns).[7] Thereafter, if the formal grievance at the institutional level is properly filed, and denied, the inmate must file an Appeal at the DOC Central Office in Tallahassee.

There exist deadlines for filing at each stage of the administrative process. Informal grievances must be received within a reasonable time of the incident or action being grieved. F.A.C. §33-103.011(1)(a). Formal grievances must be received within 15 days of response to an informal grievance, or within 15 days of the incident or action being grieved if no informal grievance was required. F.A.C. §33-103.011(1)(b)(1), (2). Grievance Appeals to the Office of the Secretary must be received within 15 days of the response to the Formal Grievance from which relief is sought.

Similarly, there exist deadlines for the DOC to respond to grievances. A Response is to be provided within 10 calendar days of staff's receipt of an Informal Grievance. F.A.C. §33-103.011(3)(a). A Response is to be provided within 20 calendar days of staff's receipt of an Informal Grievance. F.A.C. §33-103.011(3)(b). A response is to be provided within 30 calendar days of staff's receipt of a Grievance Appeal or Direct Grievance by the Office of the Secretary. F.A.C. §33-103.011(3)(c). The time limits for

---

[7] For example, as provided under F.A.C. §33-103.005, when the inmate is filing an emergency grievance, or a grievance of reprisal, the informal grievance may be skipped, and the inmate may proceed directly with the filing of a formal grievance, which is thereafter to be followed by an Appeal to the DOC Central Office in Tallahassee. Similarly, in the instance of medical concerns, the Code section relating to the handling of formal grievances (§33-103.006) provides that the inmate may bypass use of an initial informal grievance, and begin his medical complaint with a formal grievance at the institution (see §33-103.006(3)(e). This is known as a formal "Grievance of a Medical Nature" (see §33-103.008). If the inmate is dissatisfied with the result of a medical formal grievance (e.g., if it is denied), the Code pro-vides that (like a non-medical formal grievance), the inmate is authorized to appeal to the Office of the Secretary. (see §33-103.007, supra, "Appeals to the Secretary").

responding may be extended <u>F.A.C.</u> §33-103.011(4), however, the Rule further specifically provides, as follows:

> Unless the grievant [i.e., the complaining prisoner] has agreed in writing to an extension, expiration of a time limit at any step of the process shall entitled the complaintant [the prisoner] to proceed to the next step of the grievance process. If this occurs, the complaintant must clearly indicate this fact when filing at the next step. If the inmate does not agree to an extension at the central office level of review, he shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies. The Bureau of Inmate Grievance Appeals will nevertheless ensure that the grievance is investigated and responded to even though an extension has not been agreed to by the inmate.

(<u>F.A.C.</u> §33-103.011(4). In sum, if the inmate files a grievance at any level, and does not receive a timely response, he may not simply do nothing, and contend that he is entitled to bypass the Congressionally mandated administrative exhaustion requirement. Rather, if an informal grievance has not been timely answered, the prisoner must file a Formal Grievance at the institutional level with the warden's office stating that the response time had expired, that he had not agreed to an extension, and that he was therefore proceeding directly to a Formal Grievance without the usual required response to his informal grievance. Likewise, if a Formal Grievance has not been answered in a timely manner, or was ignored, and the prisoner has not agreed to an extension, then the prisoner must proceed to the DOC Secretary's office by filing an Request for Administrative Remedy or Appeal stating that the response time for his Formal Grievance had expired, that he had not agreed to an extension, and that he therefore was proceeding directly to the Appeal.

Here, the defendant Nurse King notes in her motion, that Gissenter testified at deposition that he had filed two grievances at MCI about the events of 7/30 and 7/31/06 (<u>see</u> DE# 47-3, Gissenter Depo Vol.2, TR/146 lns. 21-25), and that he later filed another grievance with the Warden at Santa Rosa C.I. after leaving MCI, asking that he forward it to the MCI (Depo, TR/146, lns.7-12;

8

TR/147, lns.1-7), and that Gissenter also testified that he did not file any grievances with the Office of the Secretary of the Florida DOC (Depo, TR/147, lns. 8-15). Defendant King argues that Gissenter's available administrative remedies were unexhausted, and that his compliant against her is subject to dismissal pursuant to 42 U.S.C. §1997e(a).

Examination of Gissenter's deposition shows that he gave an explanation for not filing an appeal with the Office of the DOC Secretary. This was that he claims to have never received an answer to his grievances at the institutional level, and therefore did not bother to appeal because ordinarily an inmate must attach a copy of a Grievance and Response when proceeding with an appeal. (Depo, TR/147, lns. 10-15).

As discussed, supra, however, if an inmate's grievance or grievances was/were ignored or went unanswered, that is no excuse for failing to comply with the mandate of exhausting administrative remedies at all levels, including an appeal to the Secretary. He may not simply state that it was his opinion that to attempt to proceed further would be futile.[8] Nor can he simply do nothing if

---

[8] The Eleventh Circuit has held that "the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA," Alexander v. Hawk, supra, 159 F.3d at 1325-26; Harris v. Garner, 190 F.3d 1279, 1286 (11 Cir. 1999).

Where exhaustion is now a precondition to suit "the courts cannot simply waive those requirements where they determine that they are futile or inadequate," since "such an interpretation would impose an enormous loophole in the PLRA which Congress clearly did not intend," and because "[m]andatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply," Alexander, supra, at 1326 [citing, Weinberger v. Salfi, 422 U.S. 749, 766 (1975) (holding that where exhaustion is a statutorily specified jurisdictional prerequisite, "the requirement...may not be dispensed with merely by a judicial conclusion of futility")]. Cf. Qawi v. Stegall, et al., 211 F.3d 1270 [table case, published on Westlaw], No. 98-1402, 2000 WL 571919, at *1-2 (6 Cir. (Mich) May 3, 2000) (Circuit Court affirming district Court's dismissal of the complaint for lack of exhaustion, and noting that the dismissal was appropriate even though by time of the appeal the plaintiff*s administrative remedies might have become time-barred) (citing Hartsfield v. Vidor, 199 F.3d 305, 309 (6 Cir. 1999); and Wright v. Morris, 111 F.3d 414, 417, n.3 (6 Cir. 1997)).

The term "available," as used in Section 1997e(a), does not mean that prison inmates must only exhaust their administrative remedies if the relief they

9

a Formal Grievance is not timely addressed or goes unanswered. This is because under those circumstances the inmate/prisoner still has an available administrative remedy: the appeal to Tallahassee, stating the basis for his request for relief, and further stating that he did not agree to an extension and that he is proceeding with the appeal in the absence of a response at the institutional level, because his Formal Grievance was not timely addressed. (It is further noted that even if an inmate were to claim that he did not file an appeal due to a missed deadline, he must still have

---

seek is "available" within the administrative apparatus; instead, the term means that a prisoner must exhaust all administrative remedies that are available before filing suit, regardless of their adequacy. Alexander v. Hawk, supra at 1325-26; Harris v. Garner, supra at 1286. This means that an inmate who is seeking money damages as relief from defendants in a lawsuit must exhaust all of his administrative remedies before filing suit, even if money damages are not available as relief through the jail/prison grievance procedure. Alexander, supra; Moore v. Smith, supra 18 F.Supp.2d at 1364.

The Courts have held that with enactment of the PLRA, 42 U.S.C. §1997e(a), as amended, requires that a prisoner must have taken the appropriate procedural the prisoner must have exhausted the available administrative processes before bringing suit in federal court steps to exhaust his administrative remedies, i.e., that. Booth v. Churner, 532 U.S. 731, 736-41 (2001) (holding that "one 'exhausts' processes, not forms of relief, and the statute provides that one must"; and further holding that "we think that Congress had mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures"); Miller v. Tanner, 196 F.3d 1190, 1193 (11 Cir. 1999) (incarcerated state prisoner must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983); Harper v. Jenkin, 179 F.3d 1311, 1312 (11 Cir. 1999) (rejecting plaintiff's argument that his administrative remedies should be deemed exhausted since his grievance was denied as untimely and any appeal therefrom would necessarily be denied; and affirming dismissal of civil rights suit for failure to satisfy mandatory exhaustion requirements, and in doing so holding that the appellant could not be considered to have exhausted his administrative remedies where he had not sought leave to file an out-of-time grievance, since to find otherwise would allow an appellant to simply ignore the PLRA*s exhaustion requirement and still gain access to federal court merely by filing an untimely grievance).

The current exhaustion requirement under §1997e(a) was designed to reduce the quantity and improve the quality of prisoner suits, and affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case; and in some instances, corrective action taken in response to a grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. Porter v. Nussle, 534 U.S. 516, 516-17 (2002). In other instances, the internal review might filter out some frivolous claims; and for cases ultimately brought to court, an administrative record clarifying the controversy's contours could facilitate adjudication. Id. at 517.

attempted to file the appeal even though it is late).[9]

Therefore, on the asserted ground of lack of exhaustion of administrative remedies, the defendant Nurse Kelly King's motion for summary judgment (DE# 47) should be granted, and as to her the complaint should be dismissed.

### Sawyer

The defendant Sawyer also asserts in his motion (DE# 50) that plaintiff Gissenter failed to properly exhaust his available administrative remedies before filing suit in federal court, and that the complaint against him is therefore subject to dismissal pursuant to 42 U.S.C. §1997e(a). In the alternative, Sawyer argues, for reasons set out in his Motion at pp. 9-16, that the facts are insufficient state claims for relief against him and that he is entitled to qualified immunity.

As further discussed, below, Sawyer's Statement of Material Facts (DE# 50-2) and the Affidavit of Celeste Kemp (Ex.D at DE# 50-9), and documentary exhibits referenced therein, establish that Gissenter did not exhaust his available administrative remedies with respect to the events of July 30 and July 31, 2006, and defendant Sawyer.

The record establishes that Gissenter cannot claim ignorance regarding the FDOC grievance procedures, or that he was not informed of their content. Prior to drafting his complaint in this case in January 2007, Gissenter received Orientations concerning Institutional and/or DOC Rules and Regulations, at South Florida Reception Center (SFRC) on 9/21/04 [DE# 50-4 at p.6 of 60], at DeSoto C.I. ("DSCI") on 10/13/04 [DE# 50-4 at p. 11 of 60]; at

---

[9] The law is clear in this Circuit that inmates/prisoners must have sought to file out-of-time grievances and/or out of time grievance appeals in order to exhaust their administrative remedies, as required under the PLRA. A prisoner who has not sought leave to file an out-of-time grievance [or appeal] cannot be considered to have exhausted his administrative remedies under §1997e(a), see Harper v. Jenkin, supra, 179 F.3d at 1312; and even if an appeal would have been futile, the requirement that it be filed is not waived. See Alexander v. Hawk, supra 159 F.3d at 1325-26.

11

Martin C.I. on 3/28/06 [DE# 50-5 at p.51 of 61], and Santa Rosa C.I. on 9/12/06 [DE# 50-4 at p.8 of 60]. It is noted, in particular, that following the March 28, 2006 Orientation at MCI, inmate Gissenter personally signed an "Acknowledgement of Receipt of Orientation" form, which stated in pertinent part that by afixing his signature thereto he certified that he had received orientation from staff members of the FDOC concerning information specific to MCI; that he acknowledged that it was his responsibility to stay abreast of any changes or updates that might take place during his incarceration as to the Rules and Regulations of the Department; and also certifying that he was provided a copy of the Grievance Rules and disciplinary procedures. [DE# 50-5, p.51 of 61].

Defendant Sawyer's exhibits, which include copies of grievances that were filed by Gissenter, shed light on their content, and make clear that Gissenter's grievances did not go unanswered, as his deposition testimony discussed above (in relation to defendant King) might suggest.

The record shows that Gissenter filed a July 30, 2006 informal grievance; but it did not complain about lack of medical care by King and Sawyer. Rather, it was concerned with hygiene items such as toothpaste. (DE# 50-5, at p.53 of 61).

On August 3, 2006, Gissenter filed an "Emergency Grievance" with the MCI Warden regarding the physical altercation involving Sawyer, and events of July 31, 2006. The thrust of the grievance was an attempt by Gissenter to seek emergency review of his grievance, so as to avoid placement on Close Management I status after he had received a Disciplinary Report (a "DR") for a 1-1 Violation, "Assault or Battery or Attempted Assault or Battery, with a Deadly Weapon." That DR was based the charging officer's assertion that Gissenter had slipped out of handcuffs and had used them as a weapon and assaulted the officer). Because the grievance did not qualify as an emergency grievance, as defined in F.A.C. §33-103.002(4) --, i.e., a matter "which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm

12

to the inmate" -- the warden responded to Gissenter on August 4, 2006, advising him that the August 3 filing was not accepted as an emergency grievance and was being returned without action. The August 4 Response also instructed Gissenter that he should resubmit his grievance within the allowable time frame in accordance with F.A.C. §33-103. (See August 3, 2006 Grievance, and August 4, 2006 Response, at DE# 50-6, pp. 3 and 4 of 35).

Accordingly, since his "emergency grievance" was rejected, Gissenter, in order to exhaust his administrative remedies, would have had to resubmit his grievance in a timely fashion, and if it was denied would have had to file an appeal. The record shows that Gissenter waited five months, and after being transferred to Santa Rosa C.I. ("SRCI"), filed a grievance with the SRCI warden on February 7, 2007; and shows that it was Returned without further processing, as untimely. (See DE# 59-9, at p.13-14 of 27). It challenged his DR and the penalty imposed as a result of the disciplinary hearing, and did not grieve the July 31, 2006 alleged use of excessive force by Sawyer. (Id.). Then, on February 12, 2007, Gissenter filed an "Emergency Grievance" with the Office of the DOC Secretary, which did not complain about the July 31, 2006 events at MCI, but rather complained that the staff at SRCI was denying him access to the grievance procedure. (DE# 59-9, at p. 15 of 27). That February 12 grievance to the DOC Secretary was not accepted as an emergency grievance, and was returned on February 20, 2007 from the DOC Central Office, without action. (DE# 59-9, at p. 16 of 27).

In sum, there was in this case no timely filing of a proper informal grievance and/or Formal Grievance at the institutional level concerning Sawyers's alleged actions and the alleged events of July 30 and 31, 2006, followed by a timely appeal.

Therefore, on the asserted ground of lack of exhaustion of administrative remedies, the defendant Sergeant J.E. Sawyer's motion for summary judgment (DE# 50) should be granted, and as to him the complaint should be dismissed.

**CONCLUSION**

It is therefore recommended that: 1) the complaint against defendants Showtight, Davis and Williams be dismissed pursuant to Fed.R.Civ.P. 4(m); 2) the complaint against the defendants King and Sawyer be dismissed pursuant to 42 U.S.C. §1997e(a), for lack of exhaustion of administrative remedies; 3) the motions of defendants King and Sawyer (DE#s 47 and 50) be granted to the extent they assert entitlement to relief based plaintiff's failure to comply with the PLRA's administrative exhaustion requirement, as codified under 42 U.S.C. §1997e(a); and 4) this case be closed.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: June 25th, 2008.

_____
UNITED STATES MAGISTRATE JUDGE


cc:  Jeffery Gissenter, Pro Se
     DC# 463634
     Florida State Prison - E Wing
     7819 N.W. 228th Street
     Raiford, FL 32026-1140

     Erica C. Gray-Nelson
     Assistant Attorney General
     OFFICE OF THE ATTORNEY GENERAL
     110 S.E. 6 Street, 10th Floor
     Fort Lauderdale, FL 33301

     Carmen Yolanda Caraya, Esquire
     MCINTOSH, SAWRAN, PELTZ & CARTAYA, P.A.
     Biscayne Building
     19 West Flagler Street, Suite 520
     Miami, FL 33130